# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CORDELL LETRON COLBERT, | ) | |
| | ) | |
| Movant/Defendant, | ) | |
| | ) | |
| v. | ) | 2:08-cv-8033-KOB-PWG |
| | ) | (2:07-cr-0310-KOB-PWG) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

In this action, Cordell LeTron Colbert, a federal prisoner acting *pro se*, has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (Civ. Doc.[1] 1 (hereinafter the "§ 2255 Motion" or "§ 2255 Mot.)).  It is now before the court on the Government's Response and motion for summary judgment.  (Civ. Doc. 12).  Upon consideration, the court concludes that the Government's motion for summary judgment is due to be granted and that Colbert's § 2255 Motion is due to be denied.

## I.     BACKGROUND

On July 31, 2007, the grand jury in this court handed down a one-count indictment against Colbert, charging him with possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).  (Crim Doc. 1).  The indictment charged three underlying Alabama state felonies, namely, two convictions for theft of property in the first degree and one conviction for robbery in the second degree.  Represented by a retained attorney J. Tim Coyle,

---

[1]     Citations herein to "Civ. Doc(s) ___" are to the court file document numbers as assigned by the clerk of this court in the § 2255 civil action, 2:08-cv-8033-KOB-PWG. Citations to "Crim. Doc(s) ___" are to the document numbers as assigned by the clerk in the underlying criminal action, 2:07-cr-310-KOB-PWG.

Colbert pled not guilty.  (Unnumbered Crim. Doc. entry dated August 16, 2007).  The case went to trial, and the jury found Colbert guilty.  (Crim. Doc. 18).  On April 3, 2008, the court held a sentencing hearing, imposing a sentence of 48 months imprisonment.  (Unnumbered Crim. Doc. entry dated April 3, 2008).  The court entered its judgment on April 7, 2008.  (Crim. Doc. 26).  Colbert did not appeal.

On September 3, 2008, Colbert timely filed his § 2255 Motion, which, as electronically filed, includes the motion itself, an affidavit, and various other attachments totaling 27 pages.  (§ 2255 Mot.").[2]  Colbert also filed a separate 26-page supporting memorandum of law.[3]  (Civ. Doc. 2 ("Defendant's Brief" or "Dft. Brief")).  In his § 2255 Motion, Colbert raises four grounds for relief.  In "Ground One" of his § 2255 Motion, Colbert contends that his attorney provided ineffective assistance, in violation of the Sixth Amendment, "by his failure to properly advise [Colbert] of his right to appeal."  (§ 2255 Mot. at 3, ¶ 12(Ground One)).  Colbert further alleges in support of this claim that "[a]fter having been found guilty..., [he] was in a state of depression due to the

---

[2]   Colbert's § 2255 Motion as filed is actually comprised of several sections and attachments, all of which are included within Civ. Doc. 1.  The first section is Colbert's § 2255 motion itself, on a pre-printed standard form application.  (§ 2255 Mot. at 1-10).  The second section is Colbert's three-page affidavit offered in support of his motion.  (*Id.* at 11-13).  The third section is Colbert's *pro se* complaint seeking relief under 42 U.S.C. § 1983 and the rubric of *Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narcotics*, 403 U.S. 388 (1971).  (§ 2255 Mot. at 14-22).  *See Colbert v. United States, et al.*, 2:08-cv-1640-WMA (the "*Bivens* Action"), Doc. 1 (N.D. Ala. September 8, 2008).  Colbert filed that complaint as a separate action in this court, but it was dismissed for failure to state a claim upon which relief can be granted.  *Id., Doc.* 7 (N.D. Ala. May 5, 2009).  The fourth part of Colbert's § 2255 Motion is a "Bond with Collateral For Temporary Restraining Order or Preliminary Injunction" (§ 2255 Mot. at 23-26), a document that Colbert appears to have contemplated filing in his *Bivens* Action, although it does not seem to have been filed in that case.  The fifth and final section of the § 2255 Motion is a one-page summons from Colbert's *Bivens* Action, directed to all defendants.  (*Id.* at 27).  All citations herein to the § 2255 Motion are to the page number designated for the entirety of the 27-page electronically filed Civ. Doc. 1.  For example, a citation to page 1 of Colbert's affidavit would be to "§ 2255 Mot. at 11."

[3]   A motion under § 2255 is subject to a one-year statute of limitations that commences upon the latest of four possible dates, the earliest of which is the date that the defendant's conviction becomes final.  *See* 28 U.S.C. § 2255(f).  Thus, Colbert's § 2255 Motion, filed only five months after his sentencing hearing, is timely on its face, and the Government does not argue otherwise.  Nonetheless, Colbert devotes more than a third of his brief, about nine pages, to an unnecessary discussion of why his claims are not time barred.  (Dft. Brief at 15-23).

2

tremendous loss he was about to suffer and felt it was a useless cause to pursue the matter further. He felt that the judicial system was biased and that an appeal would not bring a favorable ruling." (*Id.* ¶ 12(Ground One)(a)).

Counsel's alleged ineffective assistance also forms the basis of "Ground Two," in which Colbert laments that "[a]t no time throughout the proceedings in the instant matter did defense counsel require the government to provide a valid assessment of the charges." (*Id.* ¶ 12(Ground Two)(a)). "Had counsel done so," Colbert contends, "[he] would have offered his exemption to settle, discharge and close the matter." (*Id.*)

In "Ground Three," Colbert asserts that he is "actually innocent" of being a felon in possession of a firearm. (*Id.* ¶ 12(Ground Three)). More specifically, Colbert takes the position that he "was not under any 'state' judicial, legislative or local restrictions which would bar his possession of a firearm after having successfully discharged his state conviction, having his civil rights restored," and he seems to further suggest that his conviction under 18 U.S.C. § 922(g)(1) violated his right to bear arms under the Second Amendment. (§ 2255 Mot. ¶ 12(Ground Three)(a)). In his final claim, enumerated as "Ground Four," Colbert takes issue both with this court's application to him of § 2K2.1(b)(4)(A) of the United States Sentencing Guidelines in imposing sentence, as well as with his attorney's failure to object thereto. (*Id.*, ¶ 12(Ground Four)).

Following a preliminary review of Colbert's motion, the court entered an order requiring the Government to show cause why Colbert is not entitled to relief under § 2255. (Civ. Doc. 3). The Government initially responded by filing a motion seeking a more definite statement of Colbert's "assessment-of-the-charges" ineffective-assistance claim in Ground Two of his § 2255 Motion or, in the alternative, to have such allegations stricken as immaterial and frivolous. (Civ. Doc. 4).

Colbert filed a response in which he took the position that the Government is not entitled to a more definite statement of any of the claims in his § 2255 Motion.  (Civ. Doc. 10).

The Government then filed its substantive Response to Colbert's § 2255 Motion, which included the Government's own motion for summary judgment.  (Civ. Doc. 12).  In support, the Government submitted a letter from Keith L. Ray, a Probation & Parole Supervisor with the Pardon Unit of the State of Alabama Board of Pardons and Paroles.  (Doc. 12-1 (the "Ray Letter")).  Ray states in the letter that the "departmental files do not reflect [that Colbert] was granted a pardon by the Alabama Board of Pardons and Paroles."  (*Id.*)  The Government also submitted a four-page affidavit sworn by Colbert's trial attorney, in which he asserted, among other things, that, immediately following the sentencing hearing, he discussed with Colbert the possibility of an appeal, but Colbert instructed him specifically not to appeal.  (Doc. 12-1 ("Coyle Affidavit" or "Coyle Aff.")), ¶ 11).

Based on the materials in the file, including the Government's Response, the court advised the parties that the action was deemed ripe for summary disposition.  (Doc. 13).  The court further advised Colbert that he might file additional evidence and argument in support of his claims.  (*Id.*)  Colbert took advantage of that opportunity, filing a 57-page reply submission.  (Doc. 14 ("Reply")[4/]).

---

[4/]     Colbert's Reply, like his § 2255 Motion, contains several discrete sections and attachments.  The first section is comprised of a 15-page memorandum brief in support of his claims.  (Reply at 1-15).  Following that brief, are "Attachments" labeled "A" through "F" as follows:

"Attachment A - Congressional Findings and Declaration: Act June 19, 1968, P.L. 90-351, Title IV, § 901, 82 Stat. 255" (Reply at 16-18);
"Attachment B - Labor Relations Act: Definitions - 29 U.S.C. § 151 et seq."  (Reply at 19-21);
"Attachment C - Congressional Findings and Declaration of Policy; Act Oct. 24, 1972, P.L. 92-539, § 2, 86 Stat. 1070" (Reply at 22-23);
"Attachment D - State Sonsitutional (sic) Provisions and Statutes of General Effect Relating to the Acquisition of Legislative Jurisdiction by the United States State of Alabama (sic)" (Reply at 24-27);
"Attachment E - Title 18 U.S.C. § 921: Definitions" (Reply at 28-35); and
"Attachment F - Appendix A List of Restricted Weapons Under Title 18 U.S.C. § 921" (Reply at 36-

4

In that Reply, Colbert seems to be attempting to assert an additional ground for relief.  Specifically, he contends that his retained attorney had a "serious conflict of interest" because he is on the Criminal Justice Act panel of attorneys appointed to represent indigent criminal defendants in this court, and he thus receives compensation from the same federal government that prosecuted Colbert. (Reply at 3).

## II.      DISCUSSION

### A.      Ground Three - Claims of "Actual Innocence"

The issue or issues to which Colbert devotes most of his arguments are those related to Ground Three of his § 2255 Motion, which he casts as claims supporting the proposition that he is "actually innocent" of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (*See* § 2255 Mot. at 5, ¶ 12(Ground Three)(a)).  Colbert actually takes several tacks in support of this broader claim.  In one, he contends that he is innocent as a matter of statutory interpretation based on the theory that, although he admittedly had been convicted in Alabama state courts of crimes punishable by more than one year, he served those sentences and supposedly was not barred under Alabama state law from possessing a firearm.  As a result, Colbert asserts, under 18 U.S.C. § 921(a)(20), none of his Alabama state convictions constitute a predicate felony for purposes of § 922(g)(1).  (*See* § 2255 Mot. at 5, ¶ 12(Ground Three)(a); *id.* at 12, ¶ 9; Dft. Brief at 9-12).  In another argument, Colbert seems to contend that Congress lacked authority under the Commerce Clause to promulgate § 922(g), or at least that the prosecution failed to present sufficient evidence establishing a nexus to interstate commerce required to sustain a conviction under that statute.  (*See*

---

57).

Citations herein to "Reply at ___" are to the page number relative to the entire electronically filed 57-page document.

Dft. Brief at 3-9).  In yet a third argument, Colbert contends that his conviction under § 922(g)(1) violated his rights under the Second Amendment to keep and bear arms.  (§ 2255 Mot. at 5, ¶ 12(Ground Three(a); Dft. Brief at 12-14).

Colbert failed to raise any of these arguments at trial.  Colbert blames his attorney for that, and he seems to characterize such omissions as constituting ineffective assistance of counsel.  What is not entirely clear is whether Colbert asserts one or more of these issues as freestanding claims of actual innocence, "gateway" claims authorizing review of other defaulted claims, or as substantive claims of error.  *See generally Bousley v. United States*, 523 U.S. 614 (1998); *Murray v. Carrier*, 477 U.S. 478 (1986); *Herrera v. Collins*, 506 U.S. 390 (1993).  In the end, however, it matters not what role Colbert contemplates for these issues because, as explained below, all of the claims are entirely without merit, his counsel was not ineffective for failing to raise them at trial, and they do not show Colbert to be innocent.

### 1.    Section 921(a)(20) Exceptions to Predicate Felonies under § 922(g)(1)

Colbert was convicted of violating 18 U.S.C. § 922(g)(1), which provides in relevant part as follows:

> (g)    It shall be unlawful for any person–
>
> > (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
>
> to ... possess in or affecting commerce, any firearm ... which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).  Colbert was charged in the indictment with having three prior Alabama state court convictions that qualified as predicate offenses for purposes of § 922(g)(1), namely two convictions for theft of property in the first degree, *see* Ala. Code § 13A-8-3 (1975), and one

conviction for robbery in the second degree, *see* Ala. Code § 13A-8-42.  Colbert admits both that

he had these prior convictions and that they are all felonies punishable under Alabama law by

imprisonment for a term exceeding one year.  *See* Ala. Code § 13A-8-3(d) (theft of property in the

first degree is a Class B felony under Alabama law); *id.* § 13A-8-42(b) (robbery in the second degree

is a "Class B" felony); *id.* § 13A-5-6(a)(2) (providing that a Class B felony is punishable by a term

of imprisonment of not less than two years).  He also correctly concedes that state court convictions

can qualify as a predicate felony for purposes of § 922(g)(1).  *See* 18 U.S.C. § 922(g)(1) (stating that

a conviction "in any court" can be a predicate felony).

Colbert nonetheless argues that, as a matter of law, none of his three prior Alabama

convictions could serve as a predicate felony because of  18 U.S.C. § 921(a)(20), which provides in

relevant part:

> What constitutes a conviction of ... a crime [punishable by imprisonment for a term
> exceeding one year] shall be determined in accordance with the law of the
> jurisdiction in which the proceedings were held.  Any conviction which has been
> expunged, or set aside or for which a person has been pardoned or *has had civil
> rights restored shall not be considered a conviction for purposes of* [18 U.S.C. §§
> 921-930.]

(emphasis supplied). Colbert does not contend that any of his prior convictions were expunged or

that he was pardoned.  Nor does Colbert dispute the State's assertion that he has not had his civil

rights formally restored under Alabama state law by the Alabama Board of Pardons and Paroles. (*See*

Doc. 12-1, Ray Letter); *see also* Ala. Code § 15-22-20 et seq.; *United States v. Swanson*, 753 F.

Supp. 338 (N.D. Ala. 1990).  Rather, Colbert contends that simply because he had previously served

and completed his prison sentences on the felony convictions, Alabama law, he says, placed no

restrictions his possession of firearms, so he effectively "had [his] civil rights restored" for purposes

7

of § 921(a)(20).  Accordingly, his argument goes, those felonies were excepted from consideration as predicate convictions under § 922(g)(1).  Colbert is wrong.

First, contrary to Colbert's suggestion, Alabama law *did*, in fact, prohibit him from possessing the firearm at issue in this case, a Dan Wesson Arms .357 caliber revolver.  Alabama law expressly prohibits any "person who has been convicted in this state ... of committing or attempting to commit a crime of violence" from owning or possessing a "pistol."  Ala. Code § 13A-11-72(a). A "pistol" is defined as a "firearm with a barrel less than 12 inches in length," Ala. Code § 13A-11-70(1), while robbery qualifies as a "crime of violence."  *Id.*, § 13A-11-70(2).  Because one of Colbert's prior felony convictions was for second-degree robbery, his possession of the .357 revolver was criminal under Alabama law.

Second, even assuming for the sake of argument that Alabama law did *not* prohibit Colbert from possessing a firearm under Ala. Code § 13A-11-72(a), he was still subject to conviction under § 922(g)(1).  In *United States v. Nix*, 438 F.3d 1284, 1286-88 (11th Cir. 2006), the Eleventh Circuit upheld a § 922(g)(1) conviction founded upon an Alabama conviction for marijuana possession, punishable by more than one year imprisonment, even though the marijuana offense was *not* a crime of violence that would prohibit firearm possession under Ala. Code § 13A-11-72(a).  In so doing, the *Nix* court concluded that regardless of whether state law provides for the forfeiture of one's specific "civil right" to bear arms upon a conviction for a given state offense, if that state offense is punishable by more than one year imprisonment, it will support a conviction under § 922(g)(1) unless the prior state conviction was expunged or the defendant was pardoned or had his civil rights actually restored under state law.  Subsequently, the Supreme Court held similarly that the "civil rights restored" exemption of § 921(a)(20) did not apply to a Wisconsin conviction that, although

punishable by more than one year imprisonment, was formally classified under state law as a misdemeanor and thus had *never* in firearm disabilities or otherwise worked a deprivation of civil rights. *Logan v. United States*, 552 U.S. 23, 37 (2007).

However, relying upon *Dahler v. United States*, 143 F.3d 1084 (7th Cir. 1998), and *United States v. Meza-Corrales*, 183 F.3d 1116 (9th Cir. 1999), Colbert seems to suggest that his civil rights were nonetheless "restored" for purposes of § 921(a)(20) simply because he completed his sentences on the Alabama convictions. However, neither *Dahler* nor *Meza-Corrales* support that proposition, and those cases are distinguishable from both this case and *Nix*. In *Dahler*, upon his release from prison on a felony conviction, the defendant was provided with a discharge certificate stating: "Any civil rights lost as a result of conviction herein described, are restored by virtue of this discharge, under the provisions of section 57.078 of the Statutes of the State of Wisconsin." Here, by contrast, Colbert has not alleged that he was furnished with any document, from prison authorities, the Alabama Board of Pardons and Paroles, or any other state agency, advising him that his civil rights were restored. Similarly, as *Nix* itself actually points out, *Meza-Corrales* also involved an Arizona state law providing for the automatic restoration of a convicted felon's civil rights upon his release from prison. *See* 183 F.3d at 1128 (citing Ariz. Rev. Stat. Ann. § 13-912, which generally and automatically restores to a felon "any civil rights which were lost or suspended by the conviction" after absolute discharge from imprisonment). But "Alabama law, unlike ... Arizona law, does not provide for an automatic restoration of rights upon a felon's release from imprisonment. In order to obtain a restoration of rights in Alabama, a convicted felon must petition for it, and the Alabama Board of Pardons and Paroles has the authority to determine which, if any, rights will be restored." *Nix*, 438 F.3d at 1287. As stated previously, Colbert does not dispute the Government's assertion

9

that the Alabama Board of Pardons and Paroles has never restored his civil rights.

Because Colbert's Alabama theft and robbery convictions are qualifying felonies that have not been expunged and Colbert has not been pardoned nor had his civil rights restored by the Alabama Board of Pardons and Paroles, this case is governed by *Nix*.  Accordingly, Colbert's Alabama convictions are not exempted under § 921(a)(20), and they support his § 922(g)(1) conviction.

To the extent that Colbert contends that his counsel was constitutionally ineffective for failing to raise this issue at trial, that claim is likewise invalid.  *See Strickland v. Washington*, 466 U.S. 668 (1984) (to establish ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner generally must establish both constitutionally deficient performance of counsel and resulting prejudice); *Cave v. Secretary for Dep't of Corr.*, 638 F.3d 739, 755 (11th Cir. 2011) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit." (quoting *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990)); *Freeman v. Attorney General of the State of Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.")  These claims are due to be denied.

## 2.  Commerce Clause Issues

Colbert also contends that Congress lacked authority under the Commerce Clause to promulgate § 922(g), or at least that the prosecution failed to present sufficient evidence establishing a nexus to interstate commerce required to sustain a conviction under that statute.  However, both before and after Colbert's trial, the Eleventh Circuit had upheld the constitutionality of § 922(g)(1) convictions in circumstances that are materially indistinguishable from those this case.  That court did so again just recently, explaining as follows:

10

We have repeatedly held that Section 922(g)(1) is not a facially unconstitutional exercise of Congress's power under the Commerce Clause because it contains an express jurisdictional requirement. *See, e.g., United States v. Scott*, 263 F.3d 1270, 1273 (11th Cir. 2001) (per curiam).  The jurisdictional requirement is satisfied when the firearm in question has a "minimal nexus" to interstate commerce. *Id.* at 1274.  We have also held that Section 922(g)(1) was not unconstitutional as applied to a defendant who possessed a firearm only intrastate because the government demonstrated that the firearm in question "had travelled in interstate commerce." *United States v. McAllister*, 77 F.3d 387, 390 (11th Cir. 1996); *see also United States v. Dupree*, 258 F.3d 1258, 1260 (11th Cir. 2001) (holding that brandishing a firearm that was manufactured in another state suffices to establish the required "minimal nexus to interstate commerce."

*United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011).

Colbert does not dispute that the firearm Colbert was charged with possessing in Alabama was manufactured in New York and thus had traveled in interstate commerce.  Colbert's claims that § 922(g) is beyond Congress's power under the Commerce Clause and that the prosecution failed to establish the requisite nexus to interstate commerce are utterly meritless.[5/]  To the extent that Colbert contends that his counsel was constitutionally ineffective for failing to raise such claims at trial, that claim is likewise invalid.  *See Cave*, 638 F.3d 739; *Freeman*, 536 F.3d 1225.

### 3.    Second Amendment

Colbert contends that his conviction under § 922(g)(1) violates his right to keep and bear arms guaranteed by the Second Amendment.  Eleventh Circuit precedent squarely forecloses this

---

[5/]       Colbert also argues that 18 U.S.C. § 922(g)(1)'s prohibition does not apply to individuals.  That claim is frivolous.  *See* 18 U.S.C. § 921(a)(1) ("As used in this chapter [18 U.S.C. §§ 921-931], the term 'person' ... include[s] any *individual*, corporation, company, association, firm, partnership, society, or joint stock company." (emphasis added)).  Equally ridiculous is Colbert's claim that his trial counsel should have objected to venue.  (Dft. Brief at 14).  Venue is proper in the district where the offense was committed.  *See* U.S. Const. Art. III, § 2, cl. 3; Rule 18, Fed. R. Crim. P.; *United States v. Cabrales*, 524 U.S. 1, 6 (1998).  Possession offenses are committed in any district where possession occurred.  *United States v. Long*, 866 F.2d 402, 406 (11th Cir. 1989).  Colbert was charged and shown to have possessed the firearm in Birmingham, which is in the Northern District of Alabama.

claim.  *See United States v. Rozier*, 598 F.3d 768, 771 (11th Cir.), cert. denied, 130 S. Ct. 3399

(2010); *see also United States v. White*, 593 F.3d 1199, 1205-06 (11th Cir. 2010).  Because this issue

is meritless, Colbert's counsel also was not ineffective for failing to raise it at trial.[6/]  *See Cave*;

*Freeman, supra*.

> **B.      Ground Two - Ineffective Assistance of Counsel - "Failure to Require the Government to Provide a Valid Assessment of the Charges"**

In Ground Two of his § 2255 Motion, Colbert claims that his trial counsel was ineffective

on the basis that at "no time throughout the proceedings in the instant matter did [he] require the

government to provide a valid assessment of the charges." (§ 2255 Mot. at 4, ¶ 12(Ground Two)(a)).

Colbert asserts that had "counsel done so, movant would have offered his exemption to settle,

discharge and close the matter."  (*Id.*) Colbert's brief further states the following in relation to this

claim:

> The record reflects that the charges were never certified into the record.  The case
> was not bonded at the time of Colbert's arrest and detention, and no complaining
> witness testified as to an injury.  At the very least, defense counsel should have
> informed Colbert of the penal sum attached to the case so that he could have stayed
> in honor, accepted the charges for value, settlement, discharge and closure.  Because
> of defense counsel's professional malpractice, Colbert has been deprived of his life,
> liberty and pursuit of happiness as guaranteed in said constitutions (sic).

(Dft. Brief at 14-15).

This "claim" is nonsense.  While the phrases and terms Colbert uses here may have some

---

[6/]      Colbert's assertion that his trial counsel was ineffective for failing to raise a Second Amendment claim appears
to be based primarily upon the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008).
However, *Heller* was not issued until June 26, 2008, about two months *after* Colbert's conviction became final in April
of that same year.  Controlling precedent existing at the time of Colbert's trial all but foreclosed any Second Amendment
attack upon § 922(g).  *See Lewis v. United States*, 445 U.S. 55, 65 n. 8 (1980); *United States v. Chavez*, 204 F.3d 1305,
1313 n. 5 (11th Cir. 2000).  Even assuming that *Heller* might have changed the law regarding the validity of § 922(g)(1),
although *Rozier* and *White* makes clear that it did not, an attorney is not ineffective for failing to anticipate changes in
the law.  *See Smith v. Secretary, Dep't of Corr.*, 572 F.3d 1327, 1350 (11th Cir. 2009).

meaning in other legal contexts, as employed here they amount to mere gibberish having no place in federal criminal procedure.  Colbert provides no authority of any kind to support or explain this claim.[7]   The record confirms that Colbert was lawfully indicted and brought to trial.  This claim is frivolous.

### C.     Ground Four - Ineffective Assistance of Counsel - Application of USSG § § 2K2.1(b)(4)(A)

In Ground Four of his § 2255 Motion, Colbert contends that the court erred in sentencing him based upon its alleged adoption of facts in the pre-sentence report ("PSR") "regarding a charge as a crime of violence under U.S.S.G. [§] 2K2.1(b)(4)(A) as a continuation from evidence contained in the P.S.R. that relied on police reports only."  (§ 2255 Mot. at 6, ¶ 12(Ground Four)(a)).  The exact substance and contours of this claim are not readily apparent.  Colbert no doubts complains that the court credited certain information in the PSR that was allegedly based only on police reports.  However, the referenced sentencing guideline, § 2K2.1(b)(4)(A), has nothing to do with determining or enhancing a sentencing level based upon "a crime of violence."  Rather, that guideline section enhances a defendant's base offense level by two levels if the firearm unlawfully possessed is stolen.  *See, e.g., United States v. Cain*, 433 F.3d 1345, 1346-47 (11th Cir. 2005).  That enhancement was indeed applied to Colbert.  However, USSG § § 2K2.1(a)(4)(A) was also applied to Colbert to establish his base offense level at "20," based on the fact that he had committed the § 922(g)(1) offense after sustaining one felony conviction of "a crime of violence," namely, his prior Alabama

---

[7]     The Government suggests that Colbert may have lifted language popular with income tax protesters used in other cases.  *See, e.g., United States v. Long*, 597 F.3d 720, 723 (5th Cir. 2010) (when allowed to speak at sentencing upon his conviction for failing to file tax returns, the defendant stated: "For the record, Your Honor, your offer of contract is accepted for value and returned with consideration for discharge, settlement, and closure."); *United States v. Kennedy*, 233 F.R.D. 530, 530-31 (D.N.D. 2005) (striking document with similar language filed by defendant in response to civil complaint filed by the government seeking to reduce tax assessments to judgment).

conviction for robbery in the second degree.  Accordingly, his agreement is not entirely clear whether Colbert means to challenge the use of information in the PSR allegedly obtained from police reports to establish the § 2K2.1(a)(4)(A) "crime-of-violence" base-level calculation, the § 2K2.1(b)(4)(A) enhancement for the firearm being stolen, or both.  The court will assume that he is challenging both. Colbert attempts to support these claims in his Reply by citing Amendment 709 to the Guidelines, which, according to Colbert, provides that "unsustained facts mentioned in a P.S.R. have been over- ruled as qualified evidence to support enhancements based on police reports alone."  (Reply at 13).

Insofar as Colbert raises these issues as substantive claims for relief, this court may not hear them.  Non constitutional claims c an be raised on collateral review only when the alleged error constitutes a fundamental defect that inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.  *Burke v. United States,* 152 U.S. 1329, 1331 (11th Cir. 1998).  A claim that the district court misapplied the Guidelines is not cognizable in a § 2255 proceeding where the defendant was still sentenced to a prison term within the maximum allowed by statute.  *See Gilbert v. United States*, CITE.  (en banc).  Colbert was sentenced to 46 months, well within the 10-year statutory maximum sentence authorized for a § 922(g)(1) conviction.  *See* 18 U.S.C. § 924(a)(2).  However, Colbert also argues that his trial attorney was constitutionally ineffective in failing to raise these issues by objecting to this court's crediting information from the PSR at sentencing.  This court is authorized under § 2255 to hear claims alleging that counsel provided ineffective assistance in violation of the Sixth Amendment by failing to raise a Guidelines error.  CITE.  Accordingly, the court will consider these claims only as such.

A claim of ineffective assistance of counsel is established upon a showing that (1) "counsel's

performance was deficient," and (2) "that the deficient performance prejudiced the defense" because

the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The Eleventh Circuit has explained:

> To establish a constitutionally deficient performance, the defendant must "identify the acts or omissions ... that are alleged not to have been the result of reasonable professional judgment" to "show that counsel's representation fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 687, 690.  The "highly deferential" reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, and recognize that cases warranting the grant of habeas relief based on an ineffective assistance claim "are few and far between."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quotation and citation omitted). ... "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689. ... Because "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight," *Bell v. Cone*, 535 U.S. 685, 702 (2002), we must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

*Lawhorn*, 519 F.3d at 1293-94.

Once constitutionally deficient performance is established, the petitioner generally must also

prove prejudice.  To do so the petitioner must convince the court "that there is a reasonable

probability that, but for the counsel's unprofessional errors, the result of the proceeding would have

been different.  A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Strickland*, 466 U.S. at 694.  While a petitioner need not show that counsel's deficient

conduct "more likely than not altered the outcome of the case," the petitioner must do more than

show that counsel's errors merely had "some conceivable effect on the outcome of the proceeding."

*Strickland*, 466 U.S. at 693.  A court may deny relief on a claim of ineffective assistance of counsel

based upon its analysis of either prong, performance or prejudice, without proceeding to consider the other.  *See Boyd v. Allen*, 592 F.3d 1274, 1293 (11th Cir. 2010); *Rose v. McNeil*, 634 F.3d 1224, 1242 (11th Cir. 2011).

   To the extent that Colbert complains that his counsel did not object to this court's base offense calculation under § 2K2.1(a)(4)(A), he has failed to show either deficient performance or prejudice.  That section provides that a defendant's base offense level is 20 if the defendant has a prior felony conviction for either "a crime of violence or a controlled substance offense."  A felony conviction for robbery qualifies as a "crime of violence" under the Guidelines.  *See United States v. Farris*, 77 F.3d 391, 398 (11th Cir. 1996); *United States v. Wilkerson*, 286 F.3d 1324, 1325-26 (11th Cir. 2002); *see also* USSG § § 2K2.1 Commentary, Note 1;  USSG § § 4B1.2(a); USSG § § 4B1.2 Commentary, Note 1.  Colbert stipulated at trial to the fact that he had an Alabama felony conviction for robbery in the second degree, and he has not disputed the existence of that conviction here.  Accordingly, regardless of whatever was stated in, or credited by the court from, the PSR, Colbert has failed to show why his counsel should have objected to the application of § 2K2.1(a)(4)(A) or that an objection would have made any difference in the outcome of his sentencing proceeding.  This claim lacks merit.

   Colbert's other claim relates to the failure of counsel to object to the two-level enhancement to his base offense level under § 2K2.1(b)(4)(A) based on a finding that the firearm possessed was stolen.  Colbert argues that the court's finding that the weapon was stolen was impermissibly based upon a police report to that effect.  As noted above, Colbert contends that Amendment 709 to the Guidelines prohibits such use of a police report.  However, Amendment 709 does not say anything about police reports or what type of evidence or information, contained in a PSR or otherwise, may

16

be considered in determining or enhancing a defendant's offense level.  Rather, Amendment 709 addresses the counting of multiple prior sentences and the use of misdemeanor and petty offenses in determining a defendant's criminal history score.  *See* Amendment 709, USSG § Supplement to Appendix C.  Even assuming that the court credited a police report in determining that the gun here was stolen, sentencing courts are authorized to consider information contained in police reports, despite its hearsay nature, for such a purpose where the reports generally bear sufficient indicia of reliability.  *See United States v. Sanchez*, 507 F.3d 532, 538-39 (7th Cir. 2007); *United States v. Cotton*, 415 Fed. App'x 403, 403 (3d Cir. Feb. 28, 2011); *United States v. Booher*, 242 Fed. App'x 952, 954 (4th Cir. Sept. 25, 2007); *United States v. Matthews*, 150 Fed. App'x 152, 155-56 (3d Cir. Oct. 6, 2005); *see also* USSG § § § 6A1.3(a) ("[T]he court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."); *see also generally United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010) (discussing the authority of sentencing courts to consider hearsay).  Colbert has not offered anything here to suggest that any information that may have been considered by this court at sentencing was in any way materially false or unreliable.  *Cf. Ghertler*, 605 F.3d at 1269 (recognizing that to prevail on a challenge to the consideration of hearsay evidence at sentencing, a defendant must show "that the challenged evidence is materially false or unreliable.").  As such, Colbert has not established either that his counsel's performance was deficient or that, had counsel raised an objection a reasonable likelihood exists that the outcome of his sentencing proceeding would have been different.  Therefore, this claim is due to be denied.

**D.      Ground One - Ineffective Assistance of Counsel  - Failure to Consult About or File an Appeal**

In Ground One of his § 2255 Motion, Colbert claims that his counsel rendered ineffective assistance in violation of the Sixth Amendment "by his failure to properly advise [Colbert] of his right to appeal" (§ 2255 Mot. at 3, ¶ 12(Ground One)), "as required under the norms of his profession" (*Id.* at 3, ¶ 12(Ground One)(a)).  The court also discerns a closely related claim that his counsel was ineffective because he failed to actually file an appeal.  (*Id.* at 3, ¶ 12(Ground One)(b)). For the reasons explained below, Colbert is not entitled to relief on either claim.

Neither the failure of counsel to file a notice of appeal nor the failure to discuss the possibility of an appeal with the defendant, ascertain his wishes, and act accordingly, is *per se* deficient.  *Roe v. Flores-Ortega*, 528 U.S. 470, 477-80 (2000); *see also Devine v. United States*, 520 F.3d 1286, 1288 (11th Cir. 2008), and cases cited therein.  Rather, the *Strickland* test applies applicable to claims alleging that counsel was ineffective for failing to file a notice of appeal or for failing to consult with the defendant about an appeal.  *Roe*, 528 U.S. at 476-77.  A lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable for purposes of *Strickland*'s prejudice prong.  *Id.* at 477 (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)).  Furthermore, when counsel fails to file a requested appeal, a defendant is entitled to a new, out-of-time appeal without showing that his appeal would likely have had merit.  *Id.* (citing *Peguero v. United States*, 526 U.S. 23, 28 (1999)). However, "[a]t the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently."  *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

18

Regarding a duty under the Sixth Amendment to discuss an appeal, the Supreme Court has explained that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.  In making this determination, courts must take into account all the information counsel knew or should have known. *Id.*  Regarding *Strickland*'s prejudice prong, the defendant has the burden to demonstrate that a reasonable probability exists that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.  *Id.* at 484.

Here, the Government has filed an affidavit from Colbert's attorney, which states in relevant part as follows:

> I remember vividly that after Judge Bowdre got through with [s]entencing and finished up with her explanation of the appeal process and 10 day appeal notice time limit[8], everyone in the courtroom was walking out, Mr. Colbert and I sat back down at counsel table and we did discuss an appeal.  He was very specific in instructing me not to proceed with an appeal.  I disagreed and told him so.  He then asked me what grounds we would use.  I told him I did not know, but we may find something after reviewing the transcript.  He said "no."  I reminded him that we had ten days to file the notice of appeal and left it for him to decide.
>
> I sent him the final judgment ("J & C") two days after sentencing.  I had not heard from him during those two days, so I wrote him, explaining that Judge Bowdre

---

[8]  The record confirms that just prior to the conclusion of the sentencing hearing, the court advised Colbert as follows:

> Mr. Colbert, you do have the right to appeal the sentence imposed within ten days if you believe that the sentence is in violation of law.  If you are unable to pay the cost of appeal, you may apply for leave to appeal in forma pauperis and for the appointment of counsel.  If you are allowed by the court to so proceed, upon your request, the clerk of the court will assist you in preparing and filing a notice of appeal.

(Crim. Doc. 28 at 20:14-21).

had given him six weeks to report, and how that should be handled.  I closed the letter by saying:

> "If you have any questions about the Judgment, or if you have any other questions, thoughts or worries that you want to discuss further, please don't hesitate to call me and we can talk it out.  My number is [redacted], and you can call me any time you need me.  I look forward to hearing from you soon."

> I thought he might call me at night or on the weekend because he often did that during the prior nine months.  He did not call.  I believe that I tired (sic) to touch base with him, but did not get a return call within the ten day "Notice of Appeal" period.

(Coyle Aff. ¶¶ 11-12 (footnote added)).

While Colbert has made cryptic, generic allegations that Coyle did not "properly" advise him about an appeal, nowhere in any of Colbert's filings does he specifically dispute the particulars of Coyle's account.  Most importantly, Colbert has not disputed Coyle's specific assertion that when they discussed the possibility of an appeal immediately following the sentencing hearing, Colbert specifically instructed him *not* to file an appeal.  Indeed, Colbert admits in his own affidavit that, after his sentencing, he told Coyle that he, that is, Colbert, "did not believe that an appeal would help."  (§ 2255 Mot. at 12, ¶ 10).  Colbert seems to take the position that his counsel should have filed an appeal even if Colbert had instructed him not to do so, on the theory that his counsel should have realized that he was upset and depressed.  However, that is not the law.

The court concludes that Coyle's affidavit, undisputed in its material allegations, is sufficient under the circumstances here, where it does not appear that there were any non-frivolous claims on appeal, to establish that counsel's performance was not constitutionally deficient under the standards of *Flores-Ortega*, with respect to his failure to appeal or his consultation with Colbert about an appeal.  This claim is due to be denied.

### E.      Ineffective Assistance of Counsel - Conflict of Interest

Finally, Colbert has sought to raise a new claim in his Reply, namely that his trial counsel, Coyle, had a conflict of interest.  Specifically, he contends that Coyle had a conflict because he is on this court's panel of attorneys subject to appointment under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, to represent indigent federal criminal defendants and receives compensation from the federal government for providing such representation.  This claim is also frivolous.

The Sixth Amendment provides that a criminal defendant shall have the right to "the Assistance of Counsel for his defense."  "When counsel is burdened with a conflict of interest, she breaches the duty of loyalty, perhaps the most basic of counsel's duties and has therefore failed to provide effective assistance of counsel."  *Ferrell v. Hall*, 640 F.3d 1199, 1241 (11th Cir. 2011) (citations, internal quotation marks and brackets omitted).  To establish an ineffective assistance of counsel claim stemming from a conflict of interest where there was no objection at trial, a defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)).

The court notes that Coyle did not represent Colbert by appointment under the CJA.  Rather, Colbert privately selected and retained Coyle's services.  Ultimately, however, that does not matter.  Even if Coyle were receiving compensation from the United States as counsel appointed under CJA to represent Colbert in the very criminal case giving rise to the conviction he now seeks to attack, such circumstances would not constitute a conflict of interest for purposes of the Sixth Amendment. *See Davis v. Goss*, 2010 WL 1872871 (E.D. Ky. May 10, 2010); *Sanford v. United States*, 2009 WL 2524891 (E.D.N.Y. Aug. 14, 2009); *United States v. Odiodio*, 2005 WL 2990906 (N.D. Tex. Nov. 7, 2005); *United States v. Francies*, 2002 WL 31415496 (N.D. Ill. Oct. 24, 2002).  *A fortiori*, that

21

Coyle received compensation as an attorney appointed under the CJA to represent federal criminal defendants in other cases does not give rise to a conflict of interest.  This claim is due to be denied.

III.     **CONCLUSION**

Based on the foregoing, the Government's motion for summary judgment (Civ. Doc. 12) is due to be GRANTED.  Colbert's § 2255 Motion (Civ. Doc. 1) is due to be DENIED, and this action is due to be DISMISSED WITH PREJUDICE.  A separate final order will be entered.

DONE this 30th day of September, 2011.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE